UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                93-cr-181 (PKC)

     -against-

                                                ORDER

EL SAYYID NOSAIR,

                           Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        El Sayyid Nosair, who represents himself pro se, moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Docket # 1205, 1206.) For the reasons that will be explained, the Court concludes that Nosair has not demonstrated extraordinary and compelling circumstances that warrant a reduction of his sentence. Separately, the factors set forth at 18 U.S.C. § 3553(a) weigh strongly against his application. The motion will therefore be denied.

        At the conclusion of a nine-month trial in 1995, a jury found Nosair guilty of eight charges related to his participation in a terrorism conspiracy led by Sheik Omar Abdel Rahman. Nosair was convicted of seditious conspiracy to wage war against the United States and forcibly oppose its authority under 18 U.S.C. § 2384 (Count One), murder and attempted murder in aid of racketeering under 18 U.S.C. § 1959 (Counts Seven, Eight and Nine), attempted murder of a federal officer under 18 U.S.C. § 1114 (Count Ten), use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c) (Counts Eleven, Twelve and Thirteen) and possessing a firearm with an obliterated serial number under 18 U.S.C. § 922(k) (Count Fourteen). On Count Seven, the jury found Nosair guilty of murdering Meir Kahane, a rabbi and former member of Israel's parliament, at a midtown hotel on December 5, 1990. At trial, the

1

government offered evidence that while in state custody, Nosair encouraged co-conspirators to commit acts of violence, and consulted with the perpetrators of the February 26, 1993 bombing of the World Trade Center in the weeks prior to the attack.

Then-Judge Michael B. Mukasey sentenced Nosair principally to a term of life imprisonment plus 15 years. Nosair asserts that a sentencing reduction is warranted because he faces a heightened risk of adverse health outcomes if he contracts Covid-19.[1]

Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction." 18 U.S.C.§ 3582(c)(1)(A)(i). The Court has broad discretion in reviewing the motion and may consider all circumstances in combination or in isolation. See United States v. Brooker, 976 F.3d 228, 237-38 (2d Cir. 2020).

"[E]xtraordinary and compelling reasons are necessary – but not sufficient – for a defendant to obtain relief under § 3582(c)(1)(A)" because "a district court must also consider 'the factors set forth in section 3553(a)' before granting relief." United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). An application is properly denied if the applicant demonstrates extraordinary and compelling reasons for release but the factors of 18 U.S.C. § 3553(a) weigh against the application. Jones, 17 F.4th at 374-75; see also United States v. Keitt, 21 F.4th 67, 69 (2d Cir. 2021) ("when a district court denies a defendant's motion

---

[1] This motion was also filed in Nosair v. United States, 00 Civ. 8383 (LAP), the docket number assigned to Nosair's previous motion for relief brought under 28 U.S.C. § 2255. The prior section 2255 motion was denied in 2012. The duplicate filing of the motion under 00 Civ. 8383 (LAP) was in error.

under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.").

Bureau of Prisons records reflect that on or about April 22, 2020, Nosair submitted a request to the warden of his facility for a reduction in his sentence pursuant to section 3582(c)(1)(A). (Gov't Mem. Ex. 1.) His request was denied, as was his internal appeal. (Id.) There is no dispute that he administratively exhausted his application before he filed this motion on September 15, 2021. (Docket # 1205.) See Keitt, 21 F.4th at 71 (describing exhaustion requirement).

Nosair urges that extraordinary and compelling circumstances warrant a reduction in his sentence "based on his medical conditions in light of the COVID-19 and Delta virus outbreak." (Nosair Mem. at 6.) He elaborates:

> Petitioner "currently" [sic] has: Hyperlipidemia, Nuclear cataract, Astigmatism, Abnormal pupillary function, Asthma, Myobia, Hypertension, Allergic rhinitis, Acute optical periodontitis of pulpal origin, Periapical abscess with sinus, Acute gingivitis, plaque induced, Fractured dental restorative material with loss of material, Dermatitis, polyosteoarthritis, Other bursitis of hip, Plantar fascial fibromatosis, Neuralgia and neuritis, Pain in foot, Enlarged prostate with lower urinary tract symptoms, Edema, jaw pain, Prediabetes, injury of shoulder and upper arm, pain in Knees, Hip, Pain in joint, pelvic region and thigh, lower backpain, lumbago, spasm of muscle, Nerve pain, neuralgia neuritis, conjunctivitis, Otitis media, acute phariginitis, Dizziness and giddinis [sic] . . . .

(Nosair Mem. at 7; emphasis in original.) Nosair notes that among these conditions, hyperlipidemia, asthma and hypertension place him at heightened risk of adverse health outcomes if he contracts Covid-19. (Id.) Nosair is currently 66 years old.[2] The CDC advises that persons with certain health conditions are more likely to become hospitalized, need intensive

---
[2] See https://www.bop.gov/inmateloc/

3

care or die if they contract Covid-19, and these risks increase if the person is older than 65.[3] These health conditions include moderate or severe asthma and hypertension. Hyperlipidemia, or high cholesterol, is not recognized by the CDC as presenting a heightened risk of adverse health outcomes, and the Court is unaware of any official public-health guidance that suggests a person with high cholesterol levels faces a heightened risk from Covid-19.

Nosair received two doses of the Moderna Covid-19 vaccine in January and February 2021. (Gov't Response Ex. 6.) He has tested negative for Covid-19 four times. (Id.) "'[C]ourts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that . . . he does not face an extraordinary risk from COVID-19.'" United States v. Torres, 2021 WL 1687502, at *3 (S.D.N.Y. Apr. 28, 2021) (Berman, J.) (quoting United States v. Kosic, 2021 WL 1026498, at *3 (S.D.N.Y. Mar. 17, 2021) (Crotty, J.))

BOP medical records indicate that Nosair's health conditions are being managed with treatment. While the CDC advises that a person with moderate or severe asthma is at increased risk of adverse health outcomes caused by Covid-19, there is no indication of the severity of Nosair's asthma. Nosair uses the prescription inhalers albuterol and mometasone furoate to control his asthma. (Gov't Mem. Ex. 3.) In a September 2021 clinic visit, Nosair's respiratory function was classified as normal, despite his inconsistent use of inhalers. (Gov't Mem. Ex. 5.) As to Nosair's hypertension, medical records reflect that his blood pressure readings over the previous year have ranged from slightly high to normal. (Gov't Mem. Ex. 4.) To the extent that Nosair suffers from hyperlipidemia or high cholesterol, he takes prescription atorvastatin and hydrochlorothiazide. (Gov't Mem. Ex. 3.) The other ailments cataloged in Nosair's motion – including dental, vision, skin and joint conditions – are not recognized as

---

[3] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

presenting heightened risks in connection with Covid-19. Nosair's health conditions do not amount to extraordinary and compelling circumstances.

The BOP's website indicates that there currently are no confirmed positive cases of Covid-19 among inmates or staff at USP Big Sandy, where Nosair is housed.[4] Historically, 1154 inmates at Big Sandy were tested for Covid-19, with 360 positive cases. At Big Sandy, 219 staff members have completed a Covid-19 vaccination series, as have 1,007 inmates.

The Court concludes that Nosair has not identified extraordinary and compelling circumstances that warrant a reduction of his sentence under section 3582(c)(1)(A). He has been vaccinated against Covid-19, and BOP medical records indicate that his asthma and hypertension are managed by medication. His vaccination status, the vaccination status of the staff and inmate population at Big Sandy, and the fact that there are currently no confirmed positive cases at the facility also weigh against his application. In light of his manageable health conditions, his vaccination status and the widespread vaccine administration to Big Sandy's inmates and employees, Nosair has not demonstrated that any risk he faces from Covid-19 rises to the level of extraordinary and compelling circumstances that warrant a sentencing reduction.

Nosair's motion will separately be denied based on the factors of section 3553(a), which requires a court to weigh the nature and circumstances of the offense, defendant's history and characteristics, the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide for just punishment, promote deterrence, protect the public, and effectively provide the defendant with correctional treatment and care. 18 U.S.C. § 3553(a).

The government's memorandum in opposition recounts in detail the trial evidence going toward Nosair's guilt and the nature and circumstances of his offenses. (Gov't Mem. at 2-

---

[4] See https://www.bop.gov/coronavirus/

24.) The government offered evidence that Nosair killed Kahane with a gunshot to the head on December 5, 1990, after Kahane gave a lecture at the Marriott East Side Hotel in Manhattan. Nosair then shot two other individuals who attempted to stop or detain him: a seventy-year-old man named Irving Franklin and Postal Police Officer Carlos Acosta. Franklin and Acosta survived their injuries, and Acosta disabled Nosair with a shot to the neck. Two co-conspirators assisted Nosair in carrying out the shootings. Nosair told a treating physician that the killing of Kahane had been his "duty."

Trial evidence demonstrated that Nosair was a leader in a terrorist organization founded and led by Omar Abdel Rahman. Rahman once stated that the organization's goal was "to prepare whatever we can of power to terrorize the enemies of Islam." Nosair led his co-conspirators in weapons training and members of the group referred to Nosair as "the prince of marksmanship." The government offered evidence that the killing of Kahane enhanced Nosair's status within the organization, and that while housed at Rikers Island and the Attica Correctional Facility, he continued to encourage co-conspirators to take violent action, including advising them on bomb construction and assassination schemes.

In the weeks before the 1993 bombing of the World Trade Center, the attack's participants visited Nosair at Attica. In a communication with his wife, Nosair stated, "what will happen in New York, God willing, it will be . . . because of my prayers." After the bombing, Nosair told a visitor that he had "many people in my mind" as potential assassination targets, including former President Richard Nixon and former Secretary of State Henry Kissinger. Some of Nosair's co-conspirators were in advanced stages of plans to bomb the Lincoln and Holland Tunnels at the time of their arrests.

The Presentence Report calculated a Guidelines offense level of 48 and placed Nosair in Criminal History Category I, for a Guidelines range of life imprisonment. (PSR ¶ 221.) On January 17, 1996, Judge Mukasey sentenced Nosair principally to a term of life imprisonment plus fifteen years. He stated that Nosair was "a major participant in a conspiracy to wreak vast destruction in this country, that he committed a murder in aid of that larger conspiracy, that he had foreknowledge of and helped to promote the World Trade Center bombing, and that he was a central player." (Sentencing Tr. 156, quoted at Gov't Mem. 26.) Nosair's conviction and sentence were affirmed on appeal. United States v. Rahman, 189 F.3d 88 (2d Cir. 1999). In 2009, Nosair filed a petition seeking relief under 28 U.S.C. § 2255, which was denied. Nosair v. United States, 839 F. Supp. 2d 646 (S.D.N.Y. 2012). The Second Circuit later denied Nosair's application to file a second or successive petition. Nosair v. United States, No. 16-2203 (2d Cir. Jan. 13, 2021) (Docket # 72).

In support of his application, Nosair urges that he has undergone "Exceptional Rehabilitation" and "matured over the decades" of his incarceration, using the time to "better himself, learn new skills, be useful, and stay out of trouble, completing great deal of educational, vocational, and self rehabilitative improvement programs . . . ." (Nosair Mem. at 13, 14.) Congress has stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for granting a sentencing reduction. 28 U.S.C. § 994(t). However, rehabilitation may be considered alongside other factors to determine whether a sentencing reduction is warranted. Brooker, 976 F.3d at 237-38. Nosair states that he has had only two disciplinary incidents during his incarceration and has not lost any good-time credit. (Nosair Mem. at 14.) He notes that he has been incarcerated for approximately thirty years, giving him "time to reflect on his past mistakes," and he requests "a second chance to be a better

father to his children, a better man to his community and the society at large." (Id. at 15.) Nosair states that if released, he will reside with relatives in New Jersey and work in constructions. (Id.)

Though Nosair claims to have been rehabilitated in prison, his application notably expresses no remorse for the murder of Kahane or the shooting of the other two victims, Acosta and Franklin. Nosair does not acknowledge his leadership in a violent conspiracy that was dedicated to carrying out acts of war inside the United States. It does not disavow the extremist ideology that motivated his criminal conduct. Further, in his reply papers, Nosair seems to suggest that there was not sufficient evidence to support his conviction of murder in aid of racketeering and that a CIA agent committed acts of "entrapment" that led to his arrest and conviction. (Docket # 1220.)

The factors set forth at 18 U.S.C. § 3553(a) weigh strongly against the application. The nature and circumstances of Nosair's offenses involved extreme acts of violence, including a politically motivated assassination. The defendant's history and characteristics demonstrate that he was a leader of a violent terrorist organization with an ideological motivation to cause death and destruction in the United States, including the killing of civilians and destruction of infrastructure. Nosair's sentence of life plus fifteen years reflects the seriousness of his offenses, promotes respect for the law and is just punishment for his crimes. The sentence is necessary to protect the public and advance the goals of deterrence. Accordingly, the application is denied based on the factors of section 3553(a), in addition to its failure to set forth extraordinary and compelling circumstances that warrant release.

Lastly, Nosair urges that his application should be granted based on the holdings of Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99

(2013). Neither Apprendi nor Alleyne apply retroactively. See United States v. Redd, 735 F.3d 88, 92 (2d Cir. 2013) ("Alleyne did not announce a new rule of law made retroactive on collateral review."); Coleman v. United States, 329 F.3d 77, 79 (2d Cir. 2003) ("Apprendi is a new rule that does not apply retroactively to initial section 2255 motions for habeas relief."). Even if they did, for the reasons explained in the government's memorandum, at pp. 33-35, Nosair has not made a showing that they apply to his sentence, nor has he demonstrated a basis for relief due to the purported "stacking" of three consecutive five-year sentences under 18 U.S.C. § 924(c). (Nosair Mem. at 10-13.) A jury found Nosair guilty of murder in aid of racketeering, which carries a life sentence, and the district court's application of the Guidelines was affirmed on appeal. Rahman, 189 F.3d at 150-54. Additionally, while section 3582(c)(1)(a) allows a court to grant relief based on a broad range of factors, including an error at sentencing,[5] in general, "[a] motion for compassionate release should not be used to attack the legitimacy of a judge's imposed sentence – such an attack is properly brought on direct appeal or in a habeas petition, not in a motion for compassionate release brought under 18 U.S.C. § 3582(c)(1)(A). . . . To hold otherwise would be to allow compassionate release motions to act as an end run around the limitations imposed by § 2255." United States v. Antney, 2021 WL 4502478, at *5 (E.D.N.Y. Sept. 30, 2021) (Amon, J.).

CONCLUSION.

       Viewing all circumstances in combination and in isolation, Nosair has not demonstrated extraordinary and compelling circumstances that warrant a sentencing reduction, and the factors set forth at 18 U.S.C. § 3553(a) weigh strongly against the application. His

---

[5] See, e.g., United States v. Lopez, 523 F. Supp. 3d 432 (S.D.N.Y. 2021).

motion is therefore DENIED. The Clerk is directed to terminate the motion. (Docket # 1205, 1206.)

        SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 13, 2022

COPY MAILED TO:

El Sayyid Nosair
Reg. # 35074-054
USP Big Sandy
1197 Airport Road
Inez, KY  41224